IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DENISE BOGGS-WILKERSON, :
 :
    Plaintiff, :
 :Civil Action No. 2:10cv518
    v. :
 :
UNITED STATES OF AMERICA, et al. :
 :
    Defendants. :

## REPORT AND RECOMMENDATION

This personal injury claim is before the Court on defendants' Motion to Dismiss for Lack of Jurisdiction. By Order filed May 13, 2011, the matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure. The Court conducted a hearing on May 27, 2011, at which all parties were present by counsel. For the reasons stated below, the Court finds that the plaintiff's claims against the United States are barred by the Feres doctrine, Feres v. United States, 340 U.S. 135 (1950), and recommends that defendants' motion be granted.[1]

---

[1] In an effort to preserve the statute of limitations on a theory of recovery from her insurance carrier under an uninsured motorist endorsement, Boggs-Wilkerson also filed in Norfolk Circuit Court. See Va. Code § 38.2-2206(F). That case (2:11cv13) was removed and consolidated into this case on March 23, 2011, with Boggs-Wilkerson retaining leave to seek remand to Norfolk Circuit Court should the United States prevail on its Feres doctrine argument. (ECF No. 17 at 1).

1

**FACTUAL AND PROCEDURAL HISTORY**

On March 17, 2008, Master-at-Arms Third Class Alonzo Anderson ("Anderson") and Lieutenant Denise Boggs-Wilkerson ("Boggs-Wilkerson" or "Plaintiff"), both active duty members of the United States Navy, were involved in an automobile accident near Naval Station Norfolk, Norfolk, Virginia. (ECF No. 20-1 at 1-2).[2] Anderson had been stationed at the Transient Personnel Unit ("TPU") located within Naval Station Norfolk awaiting transportation to his ship-assignment. Id. at 1. Boggs-Wilkerson is a Navy doctor whose assigned place of duty was the Naval Medical Center Portsmouth Substance Abuse Rehabilitation Program also on board Naval Station Norfolk. Id. Her normal duty hours were 9:00 a.m. to 4:30 p.m. Id.

On the date of the accident, following a mandatory 8:00 a.m. daily muster at the TPU, Anderson – who the parties stipulated was acting within the scope of his employment with the federal government (ECF No. 20-1 at 3) – was directed to drive his vehicle to the long-term storage parking lot used by deployed service members. Id. at 2. While driving to the lot, Anderson struck Boggs-Wilkerson's vehicle at the intersection of Hampton Boulevard and 90th Street. Id. Boggs-Wilkerson alleges that the accident was caused by Anderson's negligent driving. Hampton Boulevard is a city-owned and maintained roadway – home

---

[2] Citations are to the parties' stipulation of facts (ECF No. 20-1) or the Defendant's supplemental declaration (ECF No. 25), as noted.

to many commercial establishments and private businesses. (ECF No. 25 at 1). At the point of the collision the road runs between two major naval facilities, Naval Base Norfolk and the Norfolk Naval Air Station. (ECF No. 20-1 at 2). Naval Base Norfolk, where Boggs-Wilkerson was headed, is located at the road's northern terminus. (ECF No. 25 at 1). Anderson's trip from the TPU to the long-term storage lot - also maintained by the Navy - required that he utilize this section of Hampton Boulevard. (ECF No. 20-1 at 2).

Following the accident, Boggs-Wilkerson, who had been commuting from her home to her place of duty, was treated for a closed finger fracture at a navy medical facility located close to the scene. (ECF No. 20-1 at 2-3). She received further treatment from the Orthopedic Clinic at Naval Medical Center Portsmouth - including pain medication and an examination to ensure that her seven-month pregnancy had not been adversely affected by the accident. Id. at 3. On March 26, 2008, she underwent surgery at the Clinic to treat her injured finger. Id. All of Boggs-Wilkerson's medical treatments - those discussed above as well as further treatment and therapy that has since been administered - have been provided to her as a benefit associated with her military service. Id. Furthermore, the parties stipulate that Boggs-Wilkerson has continued to collect full military pay, and at the culmination of her career

with the United States Navy, she will be eligible to seek further medical care from the Department of Defense or the Veteran's Administration. Id. at 2-3.

On October 19, 2010, Boggs-Wilkerson filed her Complaint seeking recovery against Anderson and the United States under the Federal Tort Claims Act ("FTCA"). (ECF No. 1 at 1). At the Rule 16(b) initial pretrial conference, and at the parties' request, the Court directed limited discovery on the issues raised by the instant motion. (ECF No. 18). On April 28, 2011, the United States and Anderson filed this Motion to Dismiss. (ECF No. 19 at 1). Progressive Direct Insurance Company and Boggs-Wilkerson both responded to the Motion to Dismiss on May 11, 2011. (ECF Nos. 23, 24). The United States filed its replies to both responses on May 17, 2011. (ECF Nos. 27, 28). Accordingly, defendants' Motion to Dismiss is ripe for judicial review.

## STANDARD OF REVIEW

In ruling on a motion to dismiss for lack of subject matter jurisdiction, plaintiff has the burden of proving that subject matter jurisdiction does exist. See Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). When a defendant challenges subject

matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, 945 F.2d at 768 (citations omitted). The motion to dismiss should be granted pursuant to Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citations omitted).

## **RECOMMENDED FINDING OF FACT AND CONCLUSIONS OF LAW**

The parties have stipulated that Anderson allegedly injured Boggs-Wilkerson while acting within the scope of his employment with the United States. (ECF No.20-1 at 3). As a result, the parties also agree that Boggs-Wilkerson's exclusive remedy is a claim against the United States. (See ECF No. 23 at 1 and ECF No. 20 at 2). That claim arises under the Federal Tort Claims Act ("FTCA") which provides that:

> [t]he remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages . . . .

28 U.S.C. § 2679(b)(1) (2010). As it has been a long-established tenet that "[t]he United States, as sovereign, is immune from suit, save as it consents to be sued," United

States. v. Sherwood, 312 U.S. 584, 586 (1941), the FTCA operates as a limited waiver of immunity, and permits certain tort claims to proceed against the government. The Supreme Court, however, in Feres v. United States, 340 U.S. 135 (1950), held that the FTCA did not operate to waive immunity as to certain claims of military service members. Id. at 146.

Feres held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Feres, 340 U.S at 146. "In its broadest sense, the [Feres] doctrine removes military governance from the rubric of civilian tort law." Stewart v. United States, 90 F.3d 102, 106 (4th Cir. 1996).

This standard to determine which claims are barred has not changed since the decision in Feres was first announced. United States v. Johnson, 481 U.S. 681, 686 (1987). Indeed, Feres "has been applied consistently to bar all suits on behalf of service members against the Government based upon service-related injuries." Id. at 687-88. The Supreme Court has "sharply limited the ability of members of the uniformed services to recover damages under the FTCA." Appelhans v. United States, 877 F.2d 309, 311 (4th Cir. 1989).

The Fourth Circuit - in particular - has recognized that Feres is addressed to a wide range of actions deemed "incident

to service." The term extends beyond military operations in the field, to encompass even recreational activity provided by the military. Hass v. United States, 518 F.2d 1138, 1141-42 (4th Cir. 1975). The Fourth Circuit reaffirmed this broad interpretation in Stansberry v. Middendorf, 567 F.2d 617, 618 (4th Cir. 1978). There in language strikingly appropriate here, the Court wrote:

> Although plaintiff here was injured in an automobile accident . . . and was off base when the accident occurred, these distinctions do not obviate the application of Hass to this case, since both here and in Hass, the plaintiff was on active duty and not on furlough, and sustained injury due to the negligence of others in the armed forces.

Id. While Middendorf involved a service member injured while riding in a military ambulance - the key elements in the Fourth Circuit's application of Feres bore little relationship to that fact. Instead, the Court emphasized factors related to the plaintiff's status at the time of the injury, including specifically the fact that Middendorf was "on active duty and not on furlough, [when he] sustained injury due to negligence of others in the armed forces." Hass, 518 F. 2d at 1140 (quoting Feres 340 U.S. at 138).

Analyzing a claim similar to Boggs-Wilkerson's, the Fourth Circuit in Stewart v. United States, found that "[t]he circumstances . . . make clear that appellant's injuries arose from activity incident to service." Stewart, 90 F.3d 102, 104.

Like Boggs-Wilkerson, Stewart, while on active duty status, suffered injuries in an automobile accident. Stewart's accident occurred on the grounds of an army base in North Carolina when he was "leaving one duty station to return to his residence in preparation for his next assignment." Id. at 105. Although the accident in Stewart occurred on base, this fact was also not conclusive in applying the Feres bar. Rather, it merely "militate[d] in favor of a conclusion that Feres applie[d]." Id. Referring to Stewart's action of driving home from one duty assignment to prepare for the next as "activity directly related to the performance of military obligations," the court considered this case to be "at the core" of the Feres doctrine. Id. at 105. Although the Court in Stewart did not consider the Feres issue to be a close one, it noted that all doubt would be dispelled by recent Supreme Court precedent "dedicated to broadening the Feres doctrine to encompass, at a minimum, all injuries suffered by military personnel that are even remotely connected to the individual's status as a member of the military." Id. (quoting Major v. United States, 835 F.2d 641, 644 (6th Cir. 1987) (emphasis in original).

Against this weight of authority, Boggs-Wilkerson contends that the statutory language of the FTCA suggests the Act envisioned a broader waiver of immunity. (ECF No. 24 at 2). She relies in large part on Brooks v. United States, 337 U.S. 49

(1949) and language in the FTCA, explicitly excluding claims arising from "combatant activities . . . during time of war . . . ." see 28 U.S.C. § 2680(j) (2010). This, her counsel argues, "clearly illustrat[es] the legislative intent behind its enactment in permitting military personnel to pursue all other (non-combat) negligence claims against the government . . . ." (ECF No. 24 at 3).

In Brooks, decided before Feres, a father and his two sons - both members of the armed services - were driving on a public highway in North Carolina late on a rainy night when they were negligently struck by a United States Army truck driven by a civilian employee of the Army. Brooks, 337 U.S. at 50. One of the brothers was killed and the other two individuals were seriously injured. Id. Unlike the issue in Feres, the question in Brooks focused on whether military personnel could recover under the FTCA for injuries incurred which were not incident to their service. Id. at 52. The Court in that case allowed the claim to proceed under the FTCA, noting however, that "[w]ere the accident incident to the Brooks' service, a wholly different case would be presented." Id.

While Brooks is similar to Boggs-Wilkerson's case, the Brooks decision focused on "an accident which had nothing to do with the Brooks' army careers, [and] injuries not caused by their service except in the sense that all human events depend

upon what has already transpired." Id. Specifically, the service members in Brooks were not reporting for duty, but were on furlough traveling with their father who was operating the vehicle. This fact was crucial, and specifically noted by the Supreme Court in deciding Feres the following year, 340 U.S. at 146.

Since Feres the Fourth Circuit has consistently emphasized the status of the military member in resolving "incident to service" issues – in each case focusing on the active-duty or furloughed status of the service member at the time of the injury. See Stewart v. United States, 90 F.3d 102, 104-05 (4th Cir. 1996); Stansberry v. Middendorf, 567 F.2d 617, 618 (4th Cir. 1978); Hass v. United States, 518 F.2d 1138, 1141-42 (4th Cir. 1975).

Applying this binding precedent, it becomes readily apparent that Boggs-Wilkerson's claims are barred by Feres. First, she was on active duty status and not on furlough when she was injured by the actions of another member of the armed forces – both undisputed facts. (ECF No. 20-1 at 1-2). Like Stewart, Boggs-Wilkerson's drive "on [her] way to work was [activity] directly connected to [her] military service and the circumstances of the accident," Stewart, 90 F.3d at 105 (quoting Shaw v. United States, 854 F.2d 360, 363 (10th Cir. 1996). She was not on furlough or leave but subject to the immediate

10

direction of her superior officers and indeed following that standing direction to report for duty at 9:00 a.m. Although Boggs-Wilkerson was travelling to her place of duty on a public road, the specific portion of Hampton Boulevard where the accident occurred is literally surrounded by naval facilities, and terminates at one of the gate-controlled access points to the Naval Base. (ECF No. 20-1 at 2, 6). She was to report for duty at 9:00 a.m. that morning, Id. at 1, thus, her purpose for being on that section of Hampton Boulevard at the time of the accident that morning was to fulfill her military obligations – namely reporting for duty on time. In fact, based on the map appended to the parties' stipulations, a party driving in the direction of Boggs-Wilkerson on that section of Hampton Boulevard could have no purpose other than reaching the base. Id. at 6.

Likewise, Anderson was on duty, following orders to drop his vehicle off at a Navy-controlled lot for long term storage, and utilizing the only access road between the base and the government-controlled lot. Id. at 2. Finally, the medical treatment that Boggs-Wilkerson has received from the date of the accident until present has been provided by the military free of charge. Id. at 3. She is also eligible to continue seeking medical care and benefits from the government upon her eventual retirement from the Navy. Id. at 3-4.

These circumstances illustrate that Boggs-Wilkerson's claim against the United States is precluded by Feres. In light of these facts, however, an unpublished District Court opinion cited to the Court also merits discussion. Mack v. United States, No. CIV.JFM00-2296, 2001 WL 179888 (D. Md. Feb. 21, 2001). In that case, a service member of the United States Air Force - Mack - was commuting to work in suburban Maryland when she was negligently struck and killed by a Special Agent with the Department of Defense, who had been a part of a convoy driving to a government field office. Mack, 2001 WL 179888 at *1. Mack's husband brought both survival and wrongful death claims under the FTCA. Id. The Maryland Court ultimately found that Mack's injuries did not arise out of conduct incident to her service, and as such, the claim was not barred by Feres. Id. at *3.

The District Judge in Mack found that Stewart was not controlling because "the accident in the present case did not occur on a military base." The Court also relied upon the fact that "Mack's accident occurred in circumstances unconnected to her service in the Air Force: the accident involved someone in another branch . . . performing an assignment unrelated to Mack's activities." Id. at *2. While the court's analysis relied on the location of the accident (a public road), it was also influenced by the fact that Mack was injured by someone in

12

another branch of the service and that the Court found her use of that portion of the public highway was unconnected to her status in the military. The Court also noted that the record was silent as to whether Mack's husband had received or would receive any benefits from the military due to his wife's death. Id. at *3, n. 5.

Unlike Mack, Boggs-Wilkerson's accident, though occurring on a public road, was very close to her duty station on a portion of public roadway surrounded by naval facilities. Boggs-Wilkerson's injuries were allegedly caused by the negligence of a fellow Navy service-member. In fact, both Boggs-Wilkerson and Anderson worked out of Naval Station Norfolk, operating from the same building. (ECF No. 20-1 at 1). The parties also stipulated that Boggs-Wilkerson will receive government paid medical care and compensation. Id.

The court in Mack recognized that any application of the Feres doctrine "requires an evaluation of a case's facts in light of the rationales supporting the doctrine." Mack at *1 (citing Stewart, 90 F.3d at 104-06). While that court determined the factors present in Mack's case did not implicate Feres, the undersigned reaches a different conclusion with respect to Boggs-Wilkerson. The facts surrounding this case reveal that she was injured on a section of a public road closely connected to her military status, she was on active duty

and using the road to report for duty on the base, she was injured by an individual carrying out orders from the same branch of the military, and she will be cared for and compensated under the military's comprehensive system for caring for injured service members. As such, her injuries were incurred incident to her military service and the rationales underlying Feres support its application to bar her FTCA claim.

Boggs-Wilkerson also claims a right to pursue coverage under an uninsured motorist endorsement providing coverage when a named defendant is immune from suit. The Order granting consolidation of her state claim against the driver reserved her right to seek remand in the event the Court dismisses her federal claim. The Defendants oppose remand which has not yet been briefed. Accordingly, the undersigned recommends the Court direct briefing on the remand motion if the dispositive recommendation on the FTCA claim is adopted.

### RECOMMENDATION

Because Boggs-Wilkerson's injuries were incurred in an activity "incident to service," as understood by the Fourth Circuit, her claim against the United States is barred by the Feres doctrine, and the undersigned recommends that respondent's Motion to Dismiss be GRANTED. The undersigned further recommends that the Court fix a date for briefs on Boggs-Wilkerson's motion to remand the consolidated complaint to

14

pursue recovery from her uninsured motorist carrier in state court.

## REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433

(4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

                                            /s/ Douglas E. Miller
                                            United States Magistrate Judge

                                            DOUGLAS E. MILLER
                                            UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

June 16, 2011

**CLERK'S MAILING CERTIFICATE**

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Martin A. Thomas
Decker, Cardon, Thomas, Weintraub & Neskis, PC
109 E. Main Street, Suite 200
Norfolk, VA 23510

George Janis Dancigers
McKenry, Dancigers, Warner, Dawson & Lake, PC
192 Ballard Court, Suite 400
Virginia Beach, VA 23462

Joel Eric Wilson
United States Attorney Office
101 W. Main Street, Suite 8000
Norfolk, VA 23510

Thomas A. Fitzgerald, II
Law Office of Stark, Dunkum, Fitzgerald & Lane
690 Town Center Drive, Suite 202
Newport News, VA 23606

Fernando Galindo,
Clerk of Court

By: _____
Deputy Clerk

_____6/17_____, 2011